IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMERICAN NATIONAL PROPERTY & CASUALTY )
COMPANY                                )
                                       )
              Plaintiff,               )
                                       )
   -vs-                                )
                                         Civil Action No.  06-268
                                       )
TIM TERWILLINGER,                      )
                                       )
                                       )
              Defendant.               )

AMBROSE, Chief District Judge.


## OPINION and ORDER OF COURT

### SYNOPSIS

An insurance carrier and insured have filed Cross-motions for Summary Judgment on the issue of whether the insured is entitled to underinsured motorist coverage for an accident sustained when his motorcycle skidded on road debris that he contends was either deposited by, or kicked up by, another vehicle.  I find that the clear and unambiguous language of the policy requires the denial of coverage. His injuries were caused by road debris and did not result from the ownership, maintenance or use of a vehicle.

### OPINION

On August 16, 2004, Tim Terwillinger ("Terwillinger") was operating a motorcycle when the motorcycle skidded on some loose gravel.  Terwillinger

crashed and sustained severe injuries.  His was the only motor vehicle involved in the accident.  At the time, his motorcycle was covered by Policy No. 37-A-Y71-991 issued by American National Property & Casualty ("ANPAC").  Terwillinger demanded underinsured motorist coverage ("UIM") on the policy.  ANPAC initiated this action for declaratory judgment regarding the availability of UIM.

Both parties have filed Cross-Motions for Summary Judgment. See Docket Nos. 13 and 16.  ANPAC argues that Terwillinger's injuries were caused by road debris.  In support of this assertion, ANPAC directs this Court's attention to Terwillinger's suit against Penn DOT in the Court of Common Pleas of Beaver County, Pennsylvania at No, 11371-2005, in which he states that the accident was caused by Penn Dot's negligence with respect to the repair of the road. See Docket No. 15-1.[1]  Terwillinger counters that even if road debris played a role in the accident, that road debris was deposited by a Penn Dot vehicle or was kicked up by an unidentified vehicle and therefore his accident was caused by a vehicle.

For the reasons set forth below, I find that Terwillinger is not entitled to recover UIM benefits.

### Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show

---

[1] It appears to be uncontested that, several hours earlier on the day of the accident, Penn Dot had engaged in "spray patching."  When spray patching is done, stone is dumped from the truck into a machine which contains oil.  The machine then mixes the stone and oil and the mixture is applied to the road by the machine.  The road is then swept. See Docket No. 15, Ex. E, p. 12-4, p. 36.

that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322.  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

3

## Analysis

"The basic principles of law governing insurance policy interpretation are well-settled in Pennsylvania." Regents of the Mercersburg College v. Republic Franklin Insurance Co., 458 F.3d 159, 171 (3d Cir. 2006), citing, E. Associated Coal Corp. v. Aetna Cas. & Surety Co., 632 F.2d 1068, 1075 (3d Cir. 1980).  "The goal of interpreting an insurance policy, like the goal of interpreting any other contract, is to determine the intent of the parties.  It begins where it must - the language of the policy." Mercersburg College, 458 F.3d at 172, citing, Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (1999).  "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.  Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." Mercersburg College, 458 F.3d at 172, quoting, Gene & Harvey Builders v. Pa. Mfrs. Ass'n., 512 Pa. 420, 517 A.2d 910, 913 (1986).

With these principles in mind, I turn to the policy language at issue.  The ANPAC policy provides the following with respect to UIM coverage:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle.  The bodily injury must be caused by the accident and result from the ownership, maintenance, or use of the vehicle.

See Docket No. 15-2, p. 7.  ANPAC urges that the policy language contemplates that the bodily injury arise due to involvement with another vehicle, not because of road debris.  According to ANPAC, Terwillinger's injuries stem from road debris which

4

remained on the road or had come loose from the road following Penn DOT's spray patching hours earlier.  As such, ANPAC reasons, the injuries cannot have resulted from the "ownership, maintenance or use" or a vehicle.

Terwillinger disagrees.  According to Terwillinger, the spray patching was applied via a Penn DOT vehicle.  Accordingly, his accident resulted from the use of a vehicle. In the alternative, the road debris was kicked loose by a vehicle which traveled the road after Penn DOT finished with its repairs.  Again, in this instance, Terwillinger insists that his injuries were caused by a vehicle because the phantom vehicle kicked the road debris loose.

Thus, the critical issue before me is whether Terwillinger's injuries resulted from the "use" of a vehicle.  I conclude that they do not.  I read the language of the policy as plain and unambiguous - injuries must arise out of the use of a vehicle as a vehicle.  The vehicle must be more than merely incidental to the injury - it must be the instrumentality which caused the injury.  Here, the vehicle (either the Penn DOT vehicle or the phantom vehicle) was merely incidental.   The cause of Terwillinger's injury was the road debris, as he himself acknowledges in his state court action.

In reaching this conclusion I find persuasive the Pennsylvania Superior Court's decision in <u>Smith v. United Services Automobile Association</u>, 392 Pa. Super. 248, 572 A.2d 785 (1990).  In <u>Smith</u>, a boy riding a bicycle was injured when, while trailing behind a haywagon, someone   threw  hay from the wagon which obscured his view resulting in his crash into a tree.  The court considered whether the boy was

entitled to recover under the haywagon owner's uninsured motorist policy, which

paid for injuries sustained by a covered person caused by an accident which arose

out of the "ownership, maintenance or use of the uninsured vehicle." <u>Smith</u>, 572

A.2d at 786.   The court reflected that it had previously interpreted the phrase

"maintenance and use of a motor vehicle" to mean:

> the "maintenance or use of a motor vehicle *as a vehicle,*
> including, incident to its maintenance or use as a vehicle,
> occupying, entering into, or alighting from it." <u>Camacho
> v. Nationwide Insurance Co.</u>, 314 Pa. Super. 21, 23, 460 A.2d
> 353, 354 (1983), affirmed per curiam, 504 Pa. 351, 473 A.2d
> 1017 (1984) (emphasis added). Moreover, we have required
> that "there must be some causal connection between the
> injuries and the use of the motor vehicle." <u>Alvarino v.
> Allstate Insurance Co.</u>, 370 Pa. Super. 563, 568, 537 A.2d 18,
> 21 (1988) (and the cases cited therein).   "The causal
> connection need not rise to the level of proximate
> causation; however, ... the connection must be more than
> mere happenstance." <u>Roach v. Port Authority of Allegheny
> County</u>, 380 Pa. Super. 28, 35, 550 A.2d 1346, 1350 (1988).

<u>Smith</u>, 572 A.2d at 787.   As applied to the case, the court rejected the contention

that because hay was an "essential part" of a hayride, the vehicle had caused the

injuries.   Instead, the court found that "[t]he injury was caused by a source which is

external to the vehicle, and not the vehicle itself" - in this case a passenger. <u>Id</u>.   The

court found "t[]he fact that the hay was used is simply irrelevant to the question of

whether the vehicle was the instrumentality which caused the injury." <u>Id</u>.

Ultimately, the court was unable "to discern any causal connection between the

vehicle and the injury, [and therefore concluded that] the injury cannot be said to

arise from the ownership, maintenance or use of the vehicle." Id.[2]

Here, Terwillinger's injuries were also caused by something external to either the Penn DOT vehicle or the phantom vehicle. They were caused by the road debris. The vehicles here cannot be said to have been the instrumentality which caused the injury. As in Smith, the connection between the vehicle[s] and Terwillinger's injuries is nothing more than mere happenstance. Simply stated, the injuries did not occur as a result of the "use" of a vehicle. See also Schweitzer v. Aetna Life and Casualty Co., 306 Pa. Super. 300, 452 A.2d 735 (1982) (holding that injuries sustained by the owner of a vehicle who was beaten while in her vehicle did not arise from the "use" of that vehicle); Camacho v. Nationwide Ins. Co., 314 Pa. Super. 21, 460 A.2d 353 (1983), aff'd, 504 Pa. Super. 351, 473 A.2d 1017 (1984) (holding that injuries sustained by a driver, who was sitting in a car, from an exploding bottle thrown into a car did not arise from the "use" of a motor vehicle); and Erie Insurance Exchange v. Eisenhuth, 305 Pa. Super. 571, 451 A.2d 1024 (1982) (holding that injuries sustained by a passenger sitting in a car when shot by the driver did not arise from the "use" of a motor vehicle).

---

[2] I recognize that Terwillinger has directed this Court's attention to the decision rendered in State Farm v. Di Petro, 1989 U.S. District LEXIS 13788 (E.D.Pa. Nov. 16, 1989). In State Farm, the court awarded uninsured motorist benefits to the defendant who was injured when his car spun out of control and struck another vehicle after skidding on some unknown substance on the highway. The court accepted the defendant's contention that an unknown car had deposited the substance on the highway and that, as such, uninsured motorist coverage was available. Nevertheless, I decline to follow the State Farm case. First, I note that the Court was constrained to reach some decision despite the fact that counsel had "offered evidence which shed absolutely no light on the basic issues." State Farm, 1989 U.S. Dist. LEXIS 13788 at * 2. Thus, the Court itself expressed frustration with the manner in which it had to reach its conclusion. Second, the Court provided no analysis of the policy language. Third, research did not disclose a single case citing State Farm as persuasive in the subsequent seventeen years. In contrast, the Third Circuit court has cited Smith with approval. See U.S. Underwriters Insur. Co. v. Liberty Mutual Insurance Co., 80 F.3d 90, 94 (3d Cir. 1996). Fourth, the Smith decision represents the view of the Pennsylvania Superior Court as to the state of the law in Pennsylvania, which I find to be more persuasive than that expressed by a federal district court construing Pennsylvania law.

## ORDER OF COURT

THEREFORE, this **7ᵗʰ** day of February, 2007 after careful consideration, and for the reasons set forth in the accompanying Opinion, the Plaintiff's Motion for Summary Judgment is GRANTED (Docket No. 13) and the Defendant's Motion for Summary Judgment is DENIED (Docket No. 16).  It is further ORDERED that Defendant is not entitled to payment of UIM benefits on ANPAC Policy No. 37-A-Y71-991-1. Judgment is entered in favor of Plaintiff and against Defendant. This case is closed forthwith.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge

8